## DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

---

[No. 6617. Decided August 2, 1907.]

THE STATE OF WASHINGTON, *Respondent*, v. LIN KATON, *Appellant.*[1]

CRIMINAL LAW—TRIAL—PROVINCE OF COURT—APPEAL—REVIEW—RAPE—EVIDENCE—SUFFICIENCY. The appellate court cannot say, as a matter of law, that the evidence of a prosecuting witness is so far impeached by her own testimony and other witnesses that the same is insufficient to justify a conviction of rape, where it was corroborated, and the jury and trial court found it sufficient (ROOT, J., dissenting).

WITNESSES—CROSS-EXAMINATION. In a criminal prosecution it is proper to allow cross-examination of the defendant's witnesses tending to discredit their positive statements.

APPEAL—RESERVATION OF GROUNDS—EXCEPTIONS. A general exception to an instruction containing several distinct propositions, some of which are free from error, is insufficient to secure a review of the objectionable portion.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered July 2, 1906, upon a trial and conviction of the crime of rape. Affirmed.

*W. H. Abel*, for appellant.

*E. E. Boner*, for respondent.

[1]Reported in 91 Pac. 250.

FULLERTON, J.—The appellant, Katon, was accused by the prosecuting attorney of Chehalis county of the crime of rape, committed on the person of one Ruby Shannon, a female child of the age of fourteen years. He pleaded not guilty to the charge, and on the issue thus raised a trial was had before a jury, which resulted in a verdict of guilty. From the judgment pronounced upon the verdict, he appeals.

It is first contended that the evidence was insufficient to justify the verdict. This contention is not based on the claim that there was a want of evidence tending to show the guilt of the appellant, but the claim is that the prosecuting witness, on whose evidence the state was compelled to rely to maintain its case, was so far impeached by her own conduct and admissions, and by the testimony of other witnesses, that the court should hold as a matter of law that her evidence was insufficient to maintain a conviction. The witness, on her direct examination, testified to acts which unquestionably showed the appellant's guilt, but on cross-examination she admitted that she had stated to certain persons named that the appellant had not had sexual intercourse with her and was not the father of her child, and that she had, only the day before, on the trial of another person for the same offense, sworn, in answer to questions put to her by the defense, that the appellant had never had sexual intercourse with her, and was innocent of any offense toward her. The only explanation she gave of her conduct in this respect was that she had promised the appellant to shield him in case any accusation should be made against him.

The direct evidence tending to support her was the testimony of two persons who saw her in company with the appellant on the evening preceding the night she says the appellant had intercourse with her. The indirect evidence was somewhat more to the point. This consisted of admissions made by the appellant's witnesses and the appellant himself, and his unsuccessful attempt to prove that he was elsewhere at the time the prosecutrix testified he was with her. But, of

course, to the overt act there was no direct evidence on the part of the state save that of the prosecutrix herself. But, notwithstanding this fact, we do not think there is here any question of law for the court. While a conviction of the crime of perjury disqualifies a person from testifying as a witness in the absence of a reversal or pardon, no other disqualification of this sort exists. *State v. Pearson*, 37 Wash. 405, 79 Pac. 985. Any person, despite his character or previous conduct, may be a witness, although his character or conduct may be shown to affect his credibility. The witness, therefore, being a lawful one, it is not the province of this court to weigh her testimony. The jury do that in the first instance, and the trial court afterwards when the evidence is challenged, but when both the jury and the trial court say that the evidence is sufficient the question is ordinarily concluded. An appellate court, which admittedly deals with only questions of law, cannot weigh conflicting evidence without usurping its functions.

The appellant called as a witness one Mrs. Cole. This person, the prosecutrix testified, accompanied the prosecutrix and the appellant to the lodging house where the crime charged against the appellant was committed. The witness denied the statement of the prosecutrix, and professed only a slight acquaintance with her. On cross-examination she was asked, and over the objection of the appellant was compelled to answer, whether or not she had written a letter to the prosecutrix asking her to meet the witness and Katon at the Aberdeen cemetery, and whether or not she had attempted to persuade the prosecutrix to leave Aberdeen with her. The first question she answered in the affirmative, and the second negatively. The ruling of the court is assigned as error on the authority of the case of *State v. Belknap*, 44 Wash. 605, 87 Pac. 934. But that case is not authority for the contention here made. The questions put to the witness in the case at bar were pertinent to the inquiry; they tended to show the intimacy of the witness with the prosecutrix; that the

witness had sought to bring the prosecutrix and the appellant together; and tended in some degree to corroborate the prosecutrix's evidence. In the case cited, the questions held objectionable were wholly foreign to any issue in the case, and tended only to the degradation of the witnesses, without in any way aiding the jury. But cross-examination, to be permissible, need not always bear directly on the question at issue. The witness may be examined on matters foreign to the issue when it reasonably tends to affect his or her credibility. For example in *State v. Coella,* 3 Wash. 99, 28 Pac. 28, it was held error to refuse to permit a woman witness to be asked whether she was not a prostitute. The question, what is and what is not an abuse of the privilege, admits of no general answer. Each case must largely depend upon the circumstances which surround it, relegating the question in a large measure to the discretion of the trial court, to be reviewed only for an abuse of that discretion. In this instance we have no hesitancy in saying the discretion was not abused.

The cross-examination of witnesses Millete and Hollingsworth was also proper. The questions complained of tended to discredit their positive statement made while testifying in chief, and as such were admissible even under the most strict application of the rule contended for by the appellant.

The part of the charge of the court complained of is not properly before us for review. The exception was a general exception to an entire paragraph containing several distinct propositions, each of which, with possibly one exception, was free from error. Such an exception we have repeatedly held, is insufficient to bring the objectionable portion of the charge into this court for review, since it does not call the attention of the trial court to the particular part of the charge that is deemed erroneous. *Gallamore v. Olympia,* 34 Wash. 379, 75 Pac. 978, and cases there cited.

The judgment is affirmed.

HADLEY, C. J., MOUNT, and CROW, JJ., concur.

Root, J. (dissenting)—I dissent.  I do not think the law justifies sending a man to the penitentiary upon the testimony of a woman who, upon oath, confesses to being unchaste and a perjurer concerning the very subject-matter in question.  Aside from that of the prosecuting witness, there is no evidence of defendant's guilt.  At the trial she testified that he was the father of her child.  On the very day before, on the trial of another man for that identical offense, she testified that this defendant had never had sexual intercourse with her and was not the father of her child.  A few weeks before, she had sworn that one W. was the father of her child.  She also admitted upon the trial of defendant that she had told a lady friend with whom she was living that defendant was innocent.  She admitted that she had been sexually intimate with at least one other man.  She mentioned three persons besides the defendant as being present and knowing of her going to a room in a Hoquiam lodging house with defendant, where she says the offense occurred.  Every one of these three, as well as the defendant himself, positively disputes her.  She also admitted that, at the preliminary examination, she had sworn that she and another girl and defendant and another man had all four occupied the same room.  Upon this trial she swore that this was not true, but that she and defendant were alone in a room all night sleeping together.  Nobody corroborated her except as to one circumstance.  Her sister and her sister's husband testified to seeing her and defendant walking along the street in Aberdeen toward Hoquiam.  This brother-in-law, who so corroborated her, was one of the men whom she, upon a former occasion, had sworn to be the father of her child.  He was tried and acquitted of the offense.  He said he had never seen this defendant before that night; that he was about a block away; that it was "rather dark," being about 9:30 in the evening; that he thought it was about the 1st of April, but didn't know how he fixed the time.  His wife fixed the time as 6 p. m.  It was about three miles from Hoquiam.  She had never seen defendant before.

This evidence is far from convincing, and even if true, would have little bearing upon the question of defendant's guilt. Seeing two girls and two men in a town on a street that, if followed, would lead to another town three or four miles distant, is not very positive evidence that one of the men committed rape on one of the girls in the other town that night. The baby was shown to the jury. It had blue eyes. The eyes of the defendant are brown and those of the mother black. The prosecuting witness also admitted saying, a few hours before the trial, that if she did not swear against defendant, her father would kick her out of the house. In explanation of her former testimony (that defendant was innocent), she said she had promised to shield him. She gave no reason as to why she should shield him instead of her brother-in-law. She admitted that defendant had offered her no inducement. Said she met him by chance on the street after her baby was born, and after a former charge against him had been dismissed, and promised (at a time when no charge was pending) to shield him.

It is urged that, the jury having found the defendant guilty and the trial court having refused a new trial, this court should not review the question. I do not think we can escape responsibility so easily. Subdivision 6 of § 6965, Bal. Code (P. C. § 2217), gives as a ground for granting a new trial the following: "When the verdict is contrary to law and evidence." This means that somebody must pass upon the question of whether the jury has returned a verdict "contrary to law and evidence." This duty devolves first upon the trial judge. If he denies the motion, his ruling can be assigned as error upon appeal. That assignment of error must then be examined by this court. It becomes our duty to say whether the ruling was error or not. To do so, we must examine and pass upon the evidence. The statute leaves us no other course. To be sure, this court should be slow to reverse the action of a trial court in denying a new trial because of alleged insufficiency of evidence, and especially

where the trial judge is of the ability and character of him who presided at this trial. But where this court is clearly convinced that the verdict is, in the language of the statute, "contrary to law and evidence," it is the duty of the court to set aside the verdict, thereby correcting the error of the trial court in not so doing. Above and beyond all technical considerations, is the paramount and inflexible demand of our jurisprudence that every defendant shall be entitled to a fair trial and be convicted of crime only upon evidence showing his guilt beyond a reasonable doubt. How any court can say that this evidence shows this defendant to be guilty beyond any reasonable doubt, or hold that any jury might properly have so found, is more than I can understand.

The statute making it a felony for a man to have illicit sexual intercourse with a girl under eighteen is a good law. It was intended to protect innocent, inexperienced, imprudent girls. It was not enacted for the benefit of "street-walkers," nor as an encouragement to blackmailers. Every conviction like the one before us is calculated to bring this law into disrepute. A noted judge once said that rape was a hard charge to prove and a much harder one to disprove. The latter portion of this observation becomes especially pertinent if a conviction is to be sustained upon such testimony of a confessed perjurer as we find here. Few things militate against a good law more than an unjust, unreasonable, and offensive enforcement thereof in a manner whereby its spirit and purpose are sacrificed to its letter or form. Such a proceeding tends to discredit the statute and to defeat its usefulness and legitimate objects.

I think the law and justice demand a reversal of the judgment in this case.