[No. 9376. Department Two. July 13, 1911.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT J. GIBSON, *Appellant.*[1]

RAPE—EVIDENCE—CORROBORATION—STATUTES—CONSTRUCTION. Rem. & Bal. Code, § 2443, providing that no conviction shall be had for rape and other sexual crimes upon the testimony of the prosecutrix unless supported by other evidence, requires evidence from an independent source having a tendency to connect the accused with the crime; although the same act repealed Rem. & Bal. Code, § 2155, requiring, in prosecutions for rape and seduction, corroborating evidence tending to "convict the defendant" of the offense; the intention being to extend the rule to other crimes than rape and seduction, rather than to abrogate the former rule.

RAPE—EVIDENCE—CORROBORATION—SUFFICIENCY. Upon a prosecution for rape, evidence that the prosecutrix started for the place where she claims to have met the defendant at the time of the offense, is not sufficient corroborating evidence to sustain a conviction within Rem. & Bal. Code, § 2443, requiring the testimony of the prosecutrix to be supported by other evidence, where no one testified to taking or seeing her there, or that she and the defendant were at any time isolated from others.

[1]Reported in 116 Pac. 872.

SAME. Proof of acquaintance and opportunity is not sufficient corroborating evidence to sustain a conviction of rape, within Rem. & Bal. Code, § 2443, requiring the testimony of the prosecutrix to be supported by other evidence, where other young men had intimate acquaintance with her and more ample opportunity.

SAME. In a prosecution for rape, where another had been first charged with the offense and offered to marry the girl and officers sought to secure evidence against him, the fact that such party was warned by the accused and advised to leave the state, does not show an attempt by the accused to fix the crime upon another or constitute sufficient corroborating evidence to support a conviction under Rem. & Bal. Code, § 2443, requiring the testimony of the prosecutrix to be supported by other evidence.

Appeal from a judgment of the superior court for Grant county, Steiner, J., entered June 9, 1910, upon a trial and conviction of rape. Reversed.

*Lambert & Jeffers* and *C. C. Upton*, for appellant.

*Daniel T. Cross*, for respondent.

ELLIS, J.—The appellant was convicted of the statutory crime of rape committed upon the person of Violet May Leighton, a female child under the age of fifteen years, and appeals from the judgment and sentence of the court. Insufficiency of the evidence to sustain the verdict, and an alleged improper instruction given by the court, are assigned as error. It is urged that the testimony of the prosecutrix was not corroborated as required by the statute, Rem. & Bal. Code, § 2155, which is cited and quoted by both appellant and the state as the controlling statute, and which reads as follows:

"No conviction shall be had for the offense of rape, or seduction, in this state upon the testimony of the female raped, or seduced, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense."

Neither in the briefs nor in argument was there any intimation that this statute had been repealed or modified, but both briefs and the entire argument were based upon and

directed to the above quoted section. The section discussed by counsel was repealed by § 52 of the Penal Code of 1909, page 906, being § 2304 of Rem. & Bal. Code. The present corroborative requirement in cases of rape and other sexual crimes is found in § 191 of the Penal Code of 1909, page 946, being Rem. & Bal. Code, § 2443, which is as follows:

"No conviction shall be had for violation of any of the foregoing provisions of this chapter upon the testimony of the female upon or against whom the crime was committed, unless supported by other evidence."

This section, however, in order to have any force, must be construed as requiring corroborative evidence of the same character as that required by the repealed section. The other evidence in support of the testimony of the female must support her testimony upon the main facts; namely, that the crime was committed and that the accused was the person who committed it. Under neither statute could it be held that corroboration or support of her testimony could be found in other evidence which supports her testimony only on immaterial or irrelevant matters. The obvious purpose of the new section is to extend the requirement of corroboration to other sexual crimes beside rape and seduction, not to abrogate or change the rule as to those two crimes. The law still requires other evidence than the testimony of the female corroborating her in the main facts, otherwise her testimony would not be "supported by other evidence." Such other evidence must still emanate from an independent source and have some tendency to connect the accused with the crime.

There is no question in this case that the crime was committed by some one about the latter part of June, 1909. The prosecutrix gave birth to a matured child on March 17, 1910, the end of the period of gestation from June preceding. The prosecutrix testified that the appellant, on the morning of Monday, June 19, or 20, 1909, went upstairs in her father's house, with a light, before daylight, and committed the crime

while she was in bed with her two sisters aged six and four years, and while her two older sisters were downstairs getting breakfast. It is urged that there is an inherent improbability in this since these were near the longest days of the year, when daylight began not long after three o'clock in the morning, and that it is hardly credible that other members of the family would be up and about their daily cares at or before that hour; that the case therefore calls for a rigid application of the rule of corroboration required by the statute. Both the father and an older sister of the prosecutrix testified that the family never arose so early.

The prosecutrix had lived for some two years in the family of one Jeff Killian, consisting of himself, his wife, and two sons, Bill and John, aged respectively twenty-two and twenty years. She slept in a room between that occupied by Killian and his wife and the bedroom of the two young men. The three rooms were connected by doorways with curtains instead of doors. She testified that she went to her father's home, seven miles from the Killian's, the Sunday night before the crime was committed, and that the appellant and her older sister, Alice, brought her back to the Killian home Tuesday night about ten o'clock. Both her father and her sister Alice testified that prosecutrix was not at her father's home at all during the month of June, but visited there in the month of May, 1909.

The corroborating or supporting circumstances relied upon by the state are all found in the testimony of Jeff Killian and Mrs. Killian. They are as follows: (1) The testimony of Mr. and Mrs. Killian that prosecutrix went to the home of her father on a Sunday between the middle and the last of June, 1909, and Mrs. Killian's testimony that appellant and her sister Alice brought her home about ten o'clock on the following Monday night. Neither of them nor any one testified to seeing prosecutrix at her father's house or to taking her there. This evidence, however, does to a degree corroborate her testimony that she was at her father's home about the time

she claims, and that she was in company with the appellant within a few days of the time when, in the nature of things, the crime must have been committed.    No one, however, testified that the two were ever at any time isolated from others.

(2) The testimony of Killian and wife that the appellant, who was brother-in-law to the prosecutrix, was on terms of friendly familiarity with her and on several occasions visited the Killian home for no apparent reason except to see her, on which visits he romped and played with her and with the Killian boys and with Killian himself.    There is no evidence that he was ever alone with her on these occasions, nor evidence of what the witnesses considered improper conduct prior to the offense, except that on one occasion he, the prosecutrix, her older sister Florence, and a Mrs. Lindsey, her relative, sat and reclined upon a bed at the same time; that at a certain pioneer's picnic he, the prosecutrix, and Florence went up on a hill above the crowd but in plain view and watched a ball game, which the Killians did not think looked well as the girls were wearing short dresses.    These things established the fact of a familiar and intimate acquaintance, and with the Killians' testimony as to the visit of the prosecutrix to her father's home above referred to, are at most corroborative only in showing acquaintance and possible opportunity to commit the crime.    This is not sufficient corroborative evidence within the meaning of the statute.    "It has often been held that mere proof of acquaintance and opportunity will not satisfy the requirements of such a law." *State v. Jonas,* 48 Wash. 133, 92 Pac. 899; *State v. Kissock,* 111 Iowa 690, 83 N. W. 724; *State v. Chapman,* 88 Iowa 254, 55 N. W. 489; *State v. Wheeler,* 116 Iowa 212, 89 N. W. 978, 93 Am. St. 236; *State v. Burns,* 110 Iowa 745, 82 N. W. 325; 3 Ency. of Evidence, 680.    This is especially true where, as in this case, two other young men had an intimate acquaintance with prosecutrix and more ample opportunity. *State v. Smith,* 54 Iowa 743, 7 N. W. 402.

(3)    As further support of the testimony of the pros-

ecutrix, it is claimed that the appellant sought to fix the crime upon John Killian. There is no evidence, however, that this charge originated with the appellant. The father of prosecutrix testified that, early in January, 1910, John Killian came to him and asked his consent to marry her. The father demurred because of the girl's youth, but his suspicions were aroused, and at the first opportunity he questioned her, with the result that she admitted her condition and charged John Killian with the crime. Alice Leighton also testified that she was present and heard this. This statement to the father and sister was at the trial denied by the prosecutrix. The father further testified that shortly afterwards he sent his son and the appellant to consult an attorney as to whether a marriage would be legal, and they returned with the information that the attorney said the girl was too young for a valid marriage. Apparently, subsequent to this, John Killian told the father that if he could not marry her he would leave the country. It is admitted that soon afterwards John Killian did leave, and at the date of the trial had not returned and his whereabouts were unknown. Jeff Killian, father of John, testified that the appellant came to his home the latter part of January and told him that the prosecutrix had been home and charged John with the offense, and appellant advised him to get John out of the country; that it was "a penitentiary crime and the old man is going to put the law on him"; that he would spend money on it before he would let it run into the law. Mrs. Killian testified that when she learned of these things she wrote to John what the appellant had said. It also appears that, when the condition of prosecutrix became known, the officers of Grant county at first sought to secure evidence against John Killian. It appeared that the appellant wanted to marry Florence, one of the older sisters of prosecutrix, and this, together with the fact that John Killian had offered to marry prosecutrix, is urged as a reason why appellant desired to prevent the matter getting into

court. It is also claimed that the motive of prosecutrix in accusing the appellant was to protect her lover, John Killian, and it is true she was at least willing to marry him. Such evidence has been held admissible to show motive. Curby v. Territory, 4 Ariz. 371, 42 Pac. 953.

This evidence fails to show a deliberate effort on the appellant's part to fix the crime upon another. It also falls far short of the corroborating circumstances found in State v. Jonas, supra, cited by the state. In that case the accused wrote his wife advising her to induce the prosecuting witness to leave the state, and also confessed to other acts which in themselves would constitute the crime. The contrast is marked.

The case of State v. Katon, 47 Wash. 1, 91 Pac. 250, is not applicable. In that case the trial and conviction occurred prior to the passage of the act of 1907 requiring corroboration and when no such provision as that found in § 2443 existed.

"The crimes of rape and assault with intent to commit rape, as has often been said, are easily charged and difficult to disprove. The just indignation felt by all right-thinking persons when a bestial assault has been made upon a girl predisposes jurors to accept as sufficient any evidence which, to their minds, tends to connect the accused with the commission of the crime. It was with the very purpose of protecting those who might be accused of such crimes from conviction without satisfactory evidence of guilt that the statutory provision was enacted, and it is our duty to apply the statute without hesitation, and give to it its reasonable interpretation, regardless of the effect which may result from its application in any particular case:" State v. Egbert, 125 Iowa 443, 101 N. W. 191.

So long as we have a statute requiring corroboration or other evidence to support the testimony of the female in such cases we are compelled to observe its requirements. The evidence offered in support must have some real supporting force. It must be something more than a colorable support. State v. Powell, 51 Wash. 372, 98 Pac. 741; State v. Stewart,

52 Wash. 61, 100 Pac. 153; *State v. McCool*, 53 Wash. 486, 102 Pac. 422, 132 Am. St. 1089; *State v. Crouch*, 60 Wash. 450, 111 Pac. 562.

We have been cited to no authority which, under a statute such as ours, would sustain a conviction on evidence so remotely corroborative as that presented here, and by a thorough search we have failed to find any. The conclusion which we have reached as to the evidence makes it unnecessary to consider the court's instructions. The judgment is reversed.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.