[No. 9838.   Department One.   January 5, 1912.[

THE STATE OF WASHINGTON, *Respondent*, v. S. N. ROBERTS,

*Appellant*.[1]

RAPE—CORROBORATION—EVIDENCE—SUFFICIENCY. In a prosecution for rape, the testimony of the prosecutrix that she was violently assaulted by the defendant is not sufficiently corroborated, where she allowed the defendant to escort her home, invited him in and entertained him at luncheon with her mother, without making any complaint, the only corroboration being the testimony of her mother that when they arrived her dress was pulled out of her belt, hair on sideways, and "their faces pretty red on one side" (FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered May 13, 1911, upon a trial and conviction of rape.   Reversed.

*Nuzum & Nuzum, O. B. Setters*, and *Geo. H. Armitage*, for appellant.

*John L. Wiley* and *O. J. Saville*, for respondent.

MOUNT, J.—The defendant was charged with the crime of rape.  Upon a trial, he was found guilty by a jury, and was sentenced to a term in the penitentiary.  He appeals from that judgment.

At the close of the evidence for the state, counsel for the defendant moved the court for a directed verdict.  The court denied this motion, saying:

"All I see is, they were together that night, left home that night, came back that night; and the fact of pregnancy, the clothes disarranged. . . .   That's all I can see.  I do not think a conviction can stand on this testimony. . . . I will overrule the motion and see what the case develops. Unless I change my mind, I will grant a new trial.  I will overrule the motion and examine these authorities."

[1]Reported in 119 Pac. 836.

Thereafter nothing was proven which in any respect strengthened the case for the state. The defendant admitted that he was acquainted with the prosecuting witness, and by not denying her statements, virtually admitted that he had spent several evenings in her company between December 13, 1910, and January 2, 1911, but denied that he had ever had sexual intercourse with her, or had ever been engaged to marry her. He also produced evidence tending to discredit her statements as to the time and place where she said the act was committed.

We are satisfied that the trial court should have granted the defendant's motion and dismissed the case. The prosecuting witness testified, in substance, that she first met the defendant on December 13, 1910. She was at that time seventeen years and ten months of age. He was a young man. The record does not disclose his age, but he is referred to as a boy. The prosecuting witness was employed as a clerk in a department store. The defendant was employed at a soda fountain in the same store. Two or three days after they met, they attended a neighborhood party together. A few days later, she says, he asked her to become his wife, but she did not accept this offer until the evening of December 24, 1910. On the evening of December 26, they went together to a theater. They left the theater about 9:15 p. m., and took the street car for home. They got off the car when about three blocks from her home. Defendant asked her to go to his brother's house, which was near by and which was a little house of three rooms. Other small houses were located near by this. She went with him. They went inside, defendant locking the door. She then said:

"I asked him why lock the door, and he said he did not want any one to come while we were there, and then he took hold of me and started to use me in a manner I did not think was right. I told him to leave me alone, and I struggled and hallooed and screamed. I did everything I could. . . . He took me into the bed room, or at least forced me in there. He threw me on the bed and had sexual intercourse with me.

Q. Did anything else occur there that you have not spoken of? A. Yes, sir. I thought if I could get my hat pins I could help myself. I went to grab for them and he interfered, got ahead of me, took my hat pins and threw them on the floor and took my hat away."

After this happened, the defendant took her home, which was about three blocks away. She invited him into her mother's house where he went, and she and her mother and the defendant had lunch there together. She also testified that, on January 2, 1911, the same thing occurred at the same place, in substantially the same way. The mother of the prosecuting witness testified to the appearance of her daughter and the defendant when they arrived home on the evening of December 26, as follows:

"The first thing I noticed that they were home sooner than usual. I made the remark, 'Why home so soon?' and he said the Washington got out sooner than the Spokane. I also noticed that my daughter's dress was pulled out of her belt, hair all on sideways, and she looked dreadful. 'What was wrong?' Mr. Roberts said they got out at Gordon and walked three blocks to the house. Q. Anything said there about it being unusual with reference to their appearance? A. I noticed that their faces were pretty red—on one side, and I asked my daughter—I couldn't help looking at her—I said, 'What is the matter with your face?' Roberts said they had been walking rather fast, got off the car because it was crowded, and walked home. Q. Was that about all that was said between you? A. Yes, all that I remember. Q. How long did Mr. Roberts stay that evening after coming home? A. Stayed long enough to have lunch. I presume twenty minutes or half an hour."

This is all there is in the record to corroborate the story of the prosecuting witness that she had been ravished by the defendant, on that evening or at any time. We are satisfied that this is not such evidence as supports the testimony of the prosecuting witness. The girl's story is very improbable. If she was violently assaulted, as she says she was, it is not reasonable that she would let her assailant escort her

home, and on their arrival there, invite him into the house with her mother and there entertain him at luncheon. This story is so unreasonable as to lead to the conclusion that defendant did not assault her at all; or, if he did so, it was with her consent. In either event, the fact that the dress of the prosecuting witness was pulled out of her belt, hair on sideways, and "their faces were pretty red on one side," is no evidence, or even a circumstance, tending to prove that the crime had been committed. These things might have all occurred and the parties be entirely innocent of wrong. If the daughter had made a complaint at that time, as she undoubtedly would had her story been true, then these circumstances might have had some weight as corroborating circumstances. But when no complaint was made, we think they are of no corroborative force. In *State v. Gibson*, 64 Wash. 131, 116 Pac. 872, we said:

"The evidence offered in support must have some real supporting force. It must be something more than a colorable support."

citing *State v. Powell*, 51 Wash. 372, 98 Pac. 741; *State v. Stewart*, 52 Wash. 61, 100 Pac. 153; *State v. McCool*, 53 Wash. 486, 102 Pac. 422, 132 Am. St. 1089; and *State v. Crouch*, 60 Wash. 450, 111 Pac. 562.

The judgment is reversed and the cause ordered dismissed.

Dunbar, C. J., Parker, and Gose, JJ., concur.

Fullerton, J. (dissenting)—I dissent. There was corroborating evidence. Its weight, and the credibility of the prosecuting witness, were for the jury, and this court but usurps the jury's function when it assumes for itself the right to pass upon them.