[No. 10262. Department One. June 18, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIÂM A.
RAYMOND, *Appellant*.[1]

RAPE—EVIDENCE—CORROBORATION—NECESSITY. Under Rem. & Bal.
Code, § 2443, providing that no conviction of rape shall be had upon
the testimony of the female against whom the crime was committed
unless supported by other evidence, corroboration of her testimony
as to the use of force to overcome her resistance is essential where
force is an element of the offense under ·Id., § 2435.

RAPE—EVIDENCE—SUFFICIENCY. There is no corroboration of the
prosecuting witness as to the use of force to overcome her resistance,
where there were no eyewitnesses, no one heard her outcry, if she
made any, she made no complaint for some time, her clothing was
not torn and she was not injured, it not being sufficient to merely
prove opportunity and recent penetration.

Appeal from a judgment of the superior court for King
county, Gay, J., entered December 16, 1911, upon a trial
and conviction of rape. Reversed.

*Sidney J. Williams* and *William R. Bell*, for appellant.

*John F. Murphy*, *Crawford E. White*, and *Reah M. White-
head*, for respondent.

PARKER, J.—The defendant, William Raymond, was
charged by information in the superior court with the crime
of rape upon the person of the prosecuting witness, com-
mitted without her consent and against her will, and by
forcibly overcoming her resistance thereto. A trial before
the court and a jury resulted in a verdict of guilty against
the defendant. His motion for a new trial, based upon al-
leged erroneous rulings of the court occurring upon the
trial and also upon the alleged insufficiency of the evidence
to sustain his conviction, was denied. Thereupon the court
sentenced him to an indeterminate term in the penitentiary

[1]Reported in 124 Pac. 495.

of from ten years to life imprisonment. From this judgment, the defendant has appealed.

The principal contention made by counsel for appellant is that the evidence produced upon the trial was not sufficient to support the conviction, because of the absence of supporting evidence, other than that of the prosecuting witness. We will therefore review the facts disclosed by the testimony of the witnesses, having in view the determination of this question. On July 6, 1911, and for some time prior thereto, appellant was a chauffeur, operating an automobile in Seattle. He and one Berry, another chauffeur, were friends and kept their automobiles stationed on a street in Seattle not far from a hotel where a sister of the prosecuting witness was employed as a telephone operator. Berry was slightly acquainted with this sister, having met her first about a week previous. Appellant had never met the sister, and neither he nor Berry had ever met the prosecuting witness. Sometime during the day of June 6, Berry made arrangements with the sister for her and the prosecuting witness to go with appellant and himself automobile riding at 11 o'clock that night, that being the time when the sister would be relieved from her work for the day at the hotel. She communicated this to the prosecuting witness, who met her accordingly at 11 o'clock. The two met appellant and Berry a few minutes later upon the street, pursuant to the arrangement made by the sister and Berry, when those who were unacquainted were introduced, and they all four immediately got into one of the automobiles and started on their ride.

They proceeded north, stopping at a place on Pike street where the men purchased some liquor, which was taken along. They proceeded to a "club house" or "road house," as it was characterized by the different witnesses, about fourteen miles north of the city, arriving there probably about midnight or a little later. There was another party there in which there were some women of questionable character. They

danced and drank there until between two and three o'clock in the morning. The prosecuting witness participated in this to some extent at least, though she denied that she did so to the extent stated by other witnesses. They then started back to the city, Berry driving and the sister riding with him in the front seat, while appellant and the prosecuting witness rode in the back seat. They proceeded a comparatively short distance and arrived at the foot of a hill, where it was claimed there would be difficulty in getting the automobile up with the full load. So with the ostensible purpose of lightening the load, appellant and the prosecuting witness got out, and the automobile proceeded leaving them alone. There was a turn in the road ahead, and a shorter path by which they could go across and meet the automobile without following the road. So they started on the path, and soon thereafter, according to the testimony of the prosecuting witness, she was forced to submit to intercourse with appellant while alone with him. She testified as to how she resisted and cried out and how he finally accomplished his purpose. There were no eyewitnesses to what occurred there, nor did any one hear her outcries, if she made any. We need not notice the facts in detail here, further than those which have, or might have, some bearing on the question of corroboration of appellant's guilt, by other supporting evidence than the testimony of the prosecuting witness. She says he first took her pants off, and that she put them on again after the act and before leaving the place; but she admits that they were not torn. The condition of her garments offered in evidence confirms this admission. They reached the automobile soon after, got in, and all proceeded to the city. She said nothing then indicating that she had been wronged, and none of the party then made any remarks indicating suspicion. Her sister testified that, when they came to the automobile, "her (meaning prosecuting witness) hair was all down." When they arrived near the home of the girls in the north part of the city, they turned round

and went back on the same road a considerable distance, when they again stopped, and appellant and the sister got out of the automobile and were for a time out of the presence of Berry and the prosecuting witness. The sister testifies to improper advances made by appellant towards her on that occasion, and of statements then made by appellant to her which it is contended by counsel for the state were in effect admissions that he had committed rape upon the prosecuting witness. Her testimony is very much involved, very unsatisfactory, and to a considerable extent contradictory. It is true she testified that, "he told me he did rape my sister." We will not attempt the practically hopeless task of analyzing her testimony here. We deem it sufficient to say that the connection in which he used the word "rape," as testified by her, could mean nothing more, in any event, than that he had intercourse with the prosecuting witness that night. It was not an admission that he had accomplished that act by force against her will.

After this occurrence, appellant and the sister returned to the automobile, when they drove to the end of a car line in the north part of the city, where the girls took a car for their home, arriving there about six o'clock in the morning. Just what account they gave to their mother of their night out is not shown, but it is clear that the prosecuting witness made no complaint or statement at that time indicating that she had been wronged in the manner charged. The prosecuting witness says she then went to bed. Sometime during that day she went to the office of the prosecuting attorney, and apparently told Mr. White, one of the deputies, something of the occurrences of the night before. This she says is the first time she even told any one anything about it. Whether or not she went to Mr. White for the purpose of telling her story, of her own volition, is not clear, though the record indicates in some degree that it was at the instance of some one else. Sometime during that day, she was taken to a physician for examination to determine whether

or not she had recent sexual intercourse. The physician testified that he found that, "The condition of the opening was such as to show that a recent entrance was made into the passage known as the vagina, as evidenced by a recent abrasion in what is medically known as the hymen." He expressed the opinion that it had occurred within twelve hours. The prosecuting witness was at the time a fully matured woman sexually, though she was only about 17 years old. Her sister was about 19 years old. We believe the foregoing are all of the facts shown by the evidence necessary for us to notice, touching the question of the sufficiency of corroborating evidence, other than the testimony of the prosecuting witness, to support the conviction.

Section 2443, Rem. & Bal. Code, provides:

"No conviction shall be had for violation of any of the foregoing provisions of this chapter upon the testimony of the female upon or against whom the crime was committed, unless supported by other evidence."

This has reference to sexual crimes defined in the same chapter, among which is rape defined by § 2435 as follows:

"Rape is an act of sexual intercourse with a female not the wife of the perpetrator committed against her will and without her consent. Every person who shall perpetrate such an act of sexual intercourse with a female of the age of ten years or upward not his wife: . . . (2) When her resistance is forcibly overcome; . . . Shall be punished by imprisonment in the state penitentiary for not less than five years."

This is the law that appellant is charged with violating. While the prosecuting witness was only 17 years old at the time, we are to remember that appellant is not charged with carnally knowing a female of previous chaste character between the ages of 15 and 18 years, with her consent; which is a crime under § 2436, Rem. & Bal. Code. That is not as great a crime as we are here concerned with. Appellant could not be punished for that crime to the extent of this judgment.

There are two principal facts necessary to be proven beyond a reasonable doubt in order to convict appellant of this crime; first, that he had sexual intercourse with the prosecuting witness; and second, that it was against her will and by forcibly overcoming her resistance thereto. Now assuming that her testimony given in this case is sufficient to prove these facts, provided the law required no other evidence, to what extent must appellant's conviction be supported by other evidence in order to satisfy the requirements of § 2443, Rem. & Bal. Code, above quoted? The authorities do not seem to be harmonious upon this question, though the lack of harmony may be more apparent than real in the light of the difference in the statutes prescribing the rule. The supreme court of Oklahoma in *Harvey v. Territory,* 11 Okl. 156, 159, 65 Pac. 837, made a very clear statement pertinent to this inquiry as follows:

"It is contended by plaintiff in error that this statute requires corroboration of the prosecutrix on every element of the offense. We cannot agree with this contention. The authorities seem to be in irreconcilable conflict on this question, but such conflict is more apparent than real. Almost every state has a statute requiring some kind of corroboration in this class of cases, yet these statutes very materially vary in their provisions and requirements. It is by reason of this difference in the various statutory provisions, that the seeming conflict in the decisions of the courts arises. We must first determine the meaning and purpose of our own statute. The only requirement is that the prosecutrix must be 'corroborated by other evidence tending to connect the defendant with commission of the offense.' Now, there are but two things that he is charged with doing, viz.: promising to marry the prosecutrix, and having illicit connection with her. The other two elements of the offense go to the character of the person protected by the law, viz.: an unmarried female, and one of chaste character. With these two elements the defendant is in no way connected; no action of his brings about either condition, but if he has promised to marry her, then he is connected with this element of the crime, and her evidence alone is not sufficient to establish such

promise, and if he has had illicit intercourse with her, this act also connects him with the offense, and the evidence of the female with whom the intercourse was had is not sufficient to prove such fact. Hence, we think the purpose of the statute is to require the prosecutrix to be corroborated on the promise of marriage and the illicit intercourse, and not upon the elements that go alone to her characteristics, viz.: that she was unmarried, and that she was of chaste character."

In this case, appellant would not be guilty unless he had, (1) intercourse with the prosecuting witness, and (2) accomplished it by force as charged. These are the elements, each of which, he must necessarily be connected with to render him guilty. Indeed they must each be his own physical act. In *State v. Timmens*, 4 Minn. 325, 332, involving a statute more nearly like ours than the Oklahoma statute, the court said:

"The statute creating the offense of adultery under promise to marry is in these words: 'Any unmarried man who under promise of marriage . . . shall seduce and have illicit connection with any unmarried female of previous chaste character, shall be guilty of a misdemeanor,' etc., 'but no conviction shall be had under the provisions of this section on the testimony of the female seduced unsupported by other evidence.'

"A conviction cannot be had under this statute upon the testimony of the woman seduced unless she is corroborated upon every material point necessary to the perfection of the offense, to wit: the promise to marry, the seduction under such promise, and the previous chaste character of the party seduced."

This holding is farther reaching than the Oklahoma decision. Possibly there is room for saying that the broader statute justifies it. Our statute is fully as broad. In *Armstrong v. People*, 70 N. Y. 38, 43, involving a statute in substance the same as ours, the court said:

"The statute under which the plaintiff in error was indicted, declares that there shall not be a conviction upon the testimony of the female complaining, not supported by other

evidence. It is settled that the supporting evidence is required as to two of the matters named in the act, and as to them only. They are the promise of marriage, and the carnal connection. (*Kenyon v. The People,* 26 N. Y. 203; *Boyse v. The People,* 55 N. Y. 644.)"

Again, in *People v. Plath,* 100 N. Y. 590, 592, 3 N. E. 790, 53 Am. Rep. 236, the same eminent court in a unanimous opinion said:

"The defendant was indicted and upon trial convicted of the crime of abduction, in that he 'with force and arms feloniously did take one Katie Kavanaugh for the purpose of prostitution, she the said Katie Kavanaugh being then and there a female under the age of sixteen years.' It was essential to the support of this conviction that the people show, not only a taking by the defendant within the meaning of the statute, but also that such taking was for the purpose of prostitution. (Penal Code, § 282; as amended by § 2, chap. 46, Laws of 1884.) If the evidence establishes only a taking and fails to show that it was *for the prohibited purpose* it is insufficient to sustain the conviction, and so proof of the fact that the person of the female was used for purposes of prostitution without proof of the abduction would not bring the accused within the condemnation of the statute. It is elementary, when a specific intent is required to make an act an offense, that the doing of the act does not raise a presumption that it was done with the specific intent. (Lawson on Presumptive Evidence, 472.) Neither can a conviction under this act be sustained upon the unsupported evidence of the female abducted. (Penal Code, § 283.) In cases where corroboration is required there has been some diversity of opinion in the authorities, as to the particular facts which should be corroborated, and the extent of the corroboration needed in order to comply with the rule; but it is now conceded to be the general rule, that it should tend to show the material facts necessary to establish the commission of a crime, and the identity of the person committing it. . . .

"The policy of the statute under consideration would seem to forbid the conviction of a person of the crime of abduction, upon the unsupported evidence of the subject of the crime, and a conviction founded upon the evidence of the

abducted female alone as to one of the elements constituting the crime, would be contrary to its implied prohibition. Such evidence must, therefore, tend to prove each of the facts constituting the crime, for otherwise a person might be convicted of an offense as to one of whose elements there existed no proof except that of the alleged abducted female. If the corroborative evidence goes to the support of the alleged purpose alone it is apparent that there is no legal proof of the commission of a crime, and it would be the same if the corroboration was confined to a support of the taking alone, and the proof as to the purpose was uncorroborated. It is not indispensable that such corroboration should be furnished by positive and direct evidence, but proof of circumstances legitimately tending to show the existence of the material facts will be sufficient to authorize a conviction. In one form or the other, however, proof must be given, aside from that of the female, tending to establish the commission of a crime, and that it was perpetrated by the person accused before a conviction can be lawfully had."

In harmony with these authorities, this court in the recent case of *State v. Gibson*, 64 Wash. 131, 133, 116 Pac. 872, said:

"The other evidence in support of the testimony of the female must support her testimony upon the main facts; namely, that the crime was committed and that the accused was the person who committed it."

Some remarks of this court in previous decisions, when viewed superficially, may seem somewhat out of harmony with this language, but when critically read in the light of the particular circumstances involved, we think it cannot be said that this court has ever held that the supporting evidence required by the statute need not tend to show the connection of the accused with all of the elements of the crime which it is necessary for him to be connected with in order to render him guilty. We are of the opinion that, since appellant must necessarily be connected with the act of intercourse, and also with the act of accomplishing it by forcibly overcoming her resistance thereto, the corroborating evidence

must tend to prove both of these facts. Whether or not it is necessary to have corroborating evidence of elements of sexual crimes with which an accused could have no connection, such as the age or chastity of the female, which`are elements of some of such crimes, we do not now decide. We have deemed it necessary to review the general question as to what facts require corroborating evidence and arrive at some definite conclusion relative thereto, because it is useless to inquire as to the corroborating effect of any particular evidence until we determine what facts must be corroborated.

The real question here is, does the corroborating evidence relied upon materially tend to prove the two main facts which we have seen are necessary to be proven to establish appellant's guilt? Let us assume, for argument's sake, that there was sufficient evidence other than the testimony of the prosecuting witness to support the conclusion that she had sexual intercourse with appellant during the night in question. There is still left to be proven the fact that he accomplished that act against her will and by forcibly overcoming her resistance thereto. Was there other evidence than her testimony fairly tending to establish such fact? The evidence showing that appellant and the prosecuting witness were away from the automobile, and alone for a time, only shows an opportunity for intercourse. Such fact does not tend in any degree to show the use of force. The evidence showing that, upon their return to the automobile her hair wás hanging down, is no more persuasive on that subject. The finding of a recent abrasion of the hymen by the physician may be some evidence of recent intercourse. That fact, however, is no evidence of such intercourse being other than voluntary on her part. She does not claim to have been otherwise injured nor is it shown that she complained of pain from this injury, nor even that any of her clothes were torn; yet she says appellant removed one of her undergarments without tearing it. The testimony of the sister as to statements made by appellant to her, claimed by the state

to be an admission by him of the commission of the crime here charged against him, we have already noticed were in no event more than an admission of intercourse with the prosecuting witness. This did not prove that such intercourse was against her will. She made no complaint to either her sister or mother when she arrived home, nor did she tell any one anything of the affair until later when she went to the prosecuting attorney's office. We are not advised of the nature of that story. We do not even know but that it was drawn from her there by others against her inclination to tell. In any event, her act of going to the prosecuting attorney and telling something of the occurrence is not shown to be of such a nature as that it could be considered a part of the *res gestae,* and it is therefore not corroborating evidence worthy of consideration. These are apparently all of the facts the state relies upon to support the conviction, other than the testimony of the prosecuting witness, and a diligent search in this record does not suggest any others to us. We are of the opinion that they do not meet the requirements of § 2443, Rem. & Bal. Code, above quoted. This view finds support in the following decisions of this court: *State v. Stewart,* 52 Wash. 61, 100 Pac. 153; *State v. McCool,* 53 Wash. 486, 102 Pac. 422, 132 Am. St. 1089; *State v. Workman,* 66 Wash. 292, 119 Pac. 751; *State v. Roberts,* 66 Wash. 503, 119 Pac. 836; *State v. Aton,* 67 Wash. 485, 121 Pac. 980. Some of these cases deal with sexual crimes in which force and want of consent are not elements. In such cases, of course, no proof is needed of facts constituting such an element. But we think that they are all in harmony with the view that the facts here relied upon are not sufficiently corroborative of the use of force, and that proof of facts constituting one principal element of the crime is not corroborative proof of facts necessary to constitute another equally important element of the crime.

Learned counsel for the state argue, in substance, that they could not have produced more convincing corroborating

evidence in this case without producing eyewitnesses which they could not do and which all must recognize seldom can be done in such cases, and hence the necessity of depending upon evidence of a less direct nature. It must be conceded that the state did not intend to hinder its prosecuting officers to the extent of requiring proof by testimony of eyewitnesses in prosecuting defendants charged with this and other classes of crimes which usually are committed where there are no such witnesses; but it is manifest that this statute requires that the corroborating evidence, "must have some real supporting force," and "must be something more than a colorable support," using the language of Justice Ellis in *State v. Gibson, supra,* at page 137. Competent circumstantial evidence is not ordinarily more apt to be wanting to prove rape by force than such evidence is usually wanting to prove the commission of many other crimes which are usually committed in secret. That such evidence is wanting in this particular case will not warrant us in ignoring the statute. It would never do to hold that, because an accused person cannot be convicted for want of competent evidence against him, he may for that reason be convicted upon incompetent evidence. We need not discuss the assignments of error relating to the trial court's instructions, since what we have already said will sufficiently show the errors in the instructions given so far as they are erroneous in the particulars complained of.

The judgment is reversed and appellant granted a new trial.

GOSE, CROW, and CHADWICK, JJ., concur.