THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN COLÓN VIDAL, Defendant-Appellant.

No. 16445.   Submitted February 29, 1960.—Decided May 25, 1960.

*Antonio J. Matta* and *Benjamín Guerra-Mondragón* for appellant. *Hiram R. Cancio, Secretary of Justice (J. B. Fernández Badillo, former Secretary of Justice, Arturo Estrella, Assistant Attorney General,* and *Alfredo Archilla Guenard* and *William Fred Santiago, Fiscal* and *Assistant Fiscal of the Supreme Court,* respectively, on the brief) for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The appellant Juan Colón Vidal was charged, convicted, and sentenced of the crime of rape, consisting in having had sexual intercourse with a female María Elena de Arce Chico, not his wife, by means of threats, force, and violence.

The only question to be decided in this appeal, as the ground on which to base the reversal of the judgment appealed from, is whether the testimony of the prosecutrix was corroborated with other evidence, as required by § 250 of the

Code of Criminal Procedure (34 L.P.R.A. § 729).[1]   It is imperative, therefore, that we make a summary of the evidence introduced.

▮▮▮▮ The evidence for the prosecution consisted of the testimony of María Elena Arce, Felícita Figueroa, and Carmen María Cintrón; and the evidence for the defense, of the testimony of Dominga Chico Cintrón and of the defendant Juan Colón Vidal.

The *Fiscal* of this Court correctly summarizes the evidence thus:

"In her testimony and upon being examined by the district attorney, the prosecutrix testified as follows:

"That she had never married and that she knew the defendant.   She said that she lived at defendant's house about August 1956 in Barrio Río Abajo of Ceiba, and also with Dominga Chico, who is her mother and defendant's wife.   That in August 1956 her mother went to town and 'left the defendant and myself alone.   The defendant asked me for a bottle of water when he was upstairs in the living room sitting on the bed.   When I took the water to him he grabbed me by the arm.'   (Tr. Ev. 6) When the defendant grabbed her he was silent and threw the bottle of water away.   He told me 'that if I did not give it to him he would kill me.'   (Tr. Ev. 7)   He also told me that 'if I yelled he would kill me.'   (Tr. Ev. 7)   All this happened before lunch time.   She said that there was no other house nearby.   When she was asked if she consented, she said: 'I struggled but he took me by force.'   (Tr. Ev. 8)   She said that since he was stronger than she he abused her.   She stated that she was virgin.   She said that she could not yell or escape because he told her that 'if I yelled he would kill me.'   She stated that her mother arrived

---

[1] "§ 729. Abortion, seduction, etc.; corroboration of testimony of complaining witness

"Upon a trial for procuring or attempting to procure an abortion, or aiding or assisting therein, or for inveigling, enticing, or taking away an unmarried female of previous chaste character, under the age of twenty-five years, for the purpose of prostitution, or aiding or assisting therein, or upon a trial for seduction under promise of marriage, or for rape, the defendant can not be convicted upon the testimony of the woman upon or with whom the offense was committed, unless her testimony is corroborated by other evidence—Code Crim. Proc., 1935 § 250." 34 L.P.R.A. § 729.

in the afternoon but before she came no one else had arrived. That when her mother arrived she told her and her mother said 'to keep quiet.' (Tr. Ev. 9) She told no one else because neither of them would let her go out. She said that after the incident the defendant misbehaved. That she became pregnant and had a child in May by Juan Colón. That defendant did 'that' only twice; (Tr. Ev. 10) each time against her will.

"On cross-examination the prosecutrix testified that she informed the authorities, for the first time, before the child was born. By stipulation of the parties the date fixed was February 12, 1957, as the time when she testified for the first time before Judge Vicente Montes, of Ceiba. She testified that thereafter she went to live with her aunt and uncle at their house; that she had never visited the town of Fajardo with Juan (the defendant) nor had she ever been to a street named La Culebra. She said that she had not been to the house of Juan Nena; that she had never had an abortion and that she had never been in the house of Farruco with Juan. That she had told her mother that her stepfather had abused her and that her mother told her to keep quiet. (Tr. Ev. 13) She said that on the day the defendant abused her he carried a sabre. (Tr. Ev. 14) She repeated that the defendant told her that if she yelled he would kill her. She said she knew that Juan had a crippled arm. She said that she had not gone to Caguas with Juan. That she went personally to the Judge of Ceiba. She again said that on the day when her mother left for town the defendant asked her for a bottle of water and that when she gave it to the defendant 'he grabbed me by the arm,' and that he had a machete in his hands. (Tr. Ev. 16) She could not explain why she had previously said that there was a sabre on a shelf and now she said that the defendant had a machete in his hands. Upon being examined by the district attorney, she explained that when she went to get some milk her cousin told her to send the milk with someone else and to go to the doctor with her. That she had not said anything to her cousin of what happened because 'they would not let me go anywhere.' (Tr. Ev. 19) After being examined by the defense as to how long after she had talked to her cousin she had gone to see the judge, she said that on the same day (Tr. Ev. 20) and that that happened on the same day she had left the house. (Tr. Ev. 21.)

"The testimony of Felícita Figueroa was reproduced by stipulation because she was in the United States. (Tr. Ev. 22) Exhibit 1 of The People, (Tr. Ev. 44–46).

### "Testimony of Carmen María Cintrón

"She said that she knew the defendant and the prosecutrix. She stated that the defendant 'told me that he had wronged her.' (Tr. Ev. 23)

"Upon being examined by the defense she testified that the defendant did not tell her the day on which it had happened nor the place. He only told her that he had wronged her and 'informed her that she was pregnant.' (Tr. Ev. 24)

"The evidence of the defendant consisted of the testimony of Dominga Chico Cintrón, mother of the prosecutrix and defendant's concubine, and of the testimony of defendant himself.

### "Testimony of Dominga Chico Cintrón

"She testified that she was not married to the defendant but that they had lived together for 20 years and had begotten 5 children. María Elena (the prosecutrix) came to live with them when she was 11 years old and that she looked for the defendant and chased him all the time wherever he went. She said that her daughter had had an abortion of defendant's child. (Tr. Ev. 27) That after the abortion she continued having sexual intercourse with the defendant and that the prosecutrix never told her that she was pregnant by the defendant, denying at all times that she lived with the defendant. She said that the prosecutrix left the house upon becoming pregnant. She said that the defendant had a crippled arm and that her daughter never told her that the defendant had abused her.

"Upon being examined by the district attorney she said that she loved her husband very much and that the prosecutrix came to live with them when she was 11 years old and that she was always chasing after the defendant. That she learned about the abortion from the defendant and not from the prosecutrix. That when the defendant was arrested he told her 'that she was pregnant by him.' (Tr. Ev. 35)

### "Testimony of Juan Colón Vidal

"He stated that the prosecutrix came to his possession when she was 11 years old. That he had had sexual relations with her, but the first time was when they went to Fajardo. He explained

that he was always 'pawing her and I always did everything I wanted with her.' (Tr. Ev. 35) That they went to the house of Farruco; that he also took her to the house of Juan Nena, on Culebra Street, and also to Caguas and to the country several times. (Tr. Ev. 36) He said that she had had an abortion of his child. Upon being asked how many times he had had sexual relations with the prosecutrix, he answered 'thousands and thousands.' (Tr. Ev. 41) That the child that was born in May was his son and that the girl surrendered to him without need of threats. He testified that his right hand was useless.

"Upon being examined by the district attorney he said that the first time that he had had sexual intercourse with the prosecutrix had been in Fajardo at Farruco's house and also in his farm and that the prosecutrix 'was to blame for everything because she forced me.' (Tr. Ev. 43) He said that the uncle and aunt of the prosecutrix were the ones that 'put into her head to say it and also to testify.' (Tr. Ev. 43)." (*Fiscal's report*, pp. 3, 4, and 5.)

Pursuant to the preceding summary of the evidence it is unquestionable that the testimony of the prosecutrix was corroborated only as to an essential fact, to wit, that the defendant-appellant had sexual intercourse with her. The evidence of corroboration of this fact consists of the admission made by the defendant to witness Felícita Figueroa, to the effect that María Elena Arce was pregnant by him, as well as the other admission made to the witness Carmen María Cintrón, that he had abused María Elena. Furthermore, defendant himself admitted in the witness stand that he had had sexual intercourse with the prosecutrix.

The offense under the modality charged against the defendant accuses him of rape in lying with a woman, not his wife, where she is prevented from resisting by reason of threats of great and immediate bodily harm accompanied by apparent power of execution or where she resists but her resistance is overcome by force or violence. Section 225 of the Penal Code (33 L.P.R.A. § 961). Hence, in a case like the one at bar the incriminatory evidence, constituting rape, should establish (1) that the defendant lay with a woman not

his wife, and (2) that the woman made actual resistance or to such a degree that it was only overcome by force or violence or that the woman was prevented from resisting by reason of threats of great and immediate bodily harm accompanied by apparent power of execution. The resistance, therefore, is an essential element of the crime of rape charged against the defendant. *People* v. *Pimentel*, 68 P.R.R. 588; *People* v. *Rodríguez*, 66 P.R.R. 881. Therefore, if as a result of applying the rule of corroboration what the evidence establishes is merely the fact that the defendant had sexual intercourse with María Elena, such fact, alone, would not constitute a public offense, because said act is not punishable by our laws, unless there are other surrounding circumstances not present here.

On previous occasions we have held that the other evidence of corroboration required by § 250 of the Code of Criminal Procedure should reveal the relation existing between the defendant and the offense. In other words, the evidence of corroboration should connect the defendant with the offense. *People* v. *Maldonado*, 17 P.R.R. 22; *People* v. *De Jesús*, 18 P.R.R. 575; *People* v. *Santiago*, 36 P.R.R. 574; *People* v. *Rodríguez*, 22 P.R.R. 98; *People* v. *Márquez*, 64 P.R.R. 354; *People* v. *Baerga*, 70 P.R.R. 85. We have also held that the corroboration required by § 250 should be the same that is deemed necessary to corroborate the testimony of an accomplice. *People* v. *Maldonado, supra* and *People* v. *Márquez, supra*. We have further held in the above-cited cases and in others, among them *People* v. *Adorno*, 81 P.R.R. 504, that evidence of corroboration is not required for all the elements of the offense, provided it is sufficient to connect the defendant with the offense. Some of our decisions instead of referring to the elements of the offense rather indicate that the testimony of the ravished woman does not need corroboration in each and everyone of the details, but only such corroboration as is sufficient to connect the defendant with the crime of which he is accused. *People* v. *De Jesús*, 30 P.R.R.

219; *People* v. *Rosario*, 25 P.R.R. 675; *People* v. *Vázquez*, 40 P.R.R. 245.

In *People* v. *López*, 24 P.R.R. 410; *People* v. *Rosario*, *supra*, and *People* v. *Morales*, 30 P.R.R. 271, we held that there are two elements of equal importance in the crime of seduction: seduction and the promise of marriage, and that there must be evidence tending to corroborate both elements. In the *Morales* case, *supra*, it was further stated that the same rule of corroboration was applicable to the cases of rape and that said rule had been applied in *People* v. *De Jesús*, *supra*, where the defendant was accused of rape.

As we have already said with respect to the crime of rape, in the charge made against appellant there are, as in the crime of seduction, two elements of equal importance: carnal knowledge and the use of threats, force or violence. There is no reason for making any distinction between seduction and rape as to the applicability of the rule of corroboration to the two elements of each crime.

The case of *People* v. *Márquez*, *supra*, seems to give the impression that the evidence of corroboration is sufficient if it connects the defendant with one of the elements of rape. However, a slight analysis of the opinion rendered in that case will reveal, on the contrary, that it is in harmony with the doctrine applying the rule of corroboration to both elements of the offense. The defendant in that case was convicted of having raped a woman over 14 years of age, indulging in sexual intercourse by force and violence. The defendant testified at the trial that he had had sexual intercourse with the prosecutrix with her consent and without resistance. Because of the erroneous admission of certain evidence, the judgment of conviction was reversed on appeal and a new trial ordered. Yet, this Court said in that case that the testimony of the father of the prosecutrix to the effect that he had heard the defendants say "that Ana (the prosecutrix) was a fool, that they had abused her," was sufficient evidence of corroboration to connect the defendants

with the commission of rape. That was the only evidence of corroboration presented since the court decided that the testimony of the mother of the prosecutrix as to the statements made to her by her daughter was not admissible in evidence because those statements were not part of the *res gestae.*

The admissions of the defendant could not be considered as evidence of corroboration of the first element of rape, that is, the sexual act, because as to that particular defendant himself testified admitting having had sexual intercourse with the prosecutrix. Therefore, in saying that those admissions connected the defendants with the offense, this Court necessarily referred to the corroboration of the second element of the offense, that is, the force or violence, although it is quite doubtful that from the phrase "that Ana was a fool, that they had abused her," it may be inferred that the defendants had sexual intercourse with Ana by means of force or violence.[2]

In the case at bar the defendant admitted to two witnesses for the prosecution that he had abused María Elena and that she was pregnant by him. In common parlance, "to abuse" is synonymous with "to dishonor" which means to deflower a maiden; but it can not be concluded from that phrase that the defloration was committed by force and violence or by means of threats, thereby overcoming the resistance of the deflowered female. Consequently, we have before us evidence of corroboration of the sexual intercourse only and not of the other essential element of the crime of rape.

■ In most American jurisdictions the rule is that in the absence of statute, a conviction for rape may be sustained on the uncorroborated testimony of the prosecutrix. Even in these jurisdictions the rule has been conditioned on the fact that the testimony of the female must be clear and convincing. Likewise, it is common practice in those jurisdictions to warn the jury that it must exercise its discretion with great cau-

---

[2] See *People* v. *Downs,* 140 N. E. 706.

tion in order to avoid giving undue weight to uncorroborated testimony of the prosecutrix. This rule admits that the accusation of rape is one easily to be made but very hard to be defended.

In some jurisdictions the rule is that even in the absence of statute the conviction for rape should not be sustained unless there are surrounding circumstances tending to corroborate the testimony of the prosecutrix.

In many state jurisdictions the statute requires, as in Puerto Rico, that the testimony of the prosecutrix be corroborated. However, even in these jurisdictions the authorities disagree as to the facts that should be corroborated. In Iowa, for example, it has been held that the evidence of corroboration is sufficient if it connects the defendant with the sexual act. Other states, such as New York, Washington, and Texas, maintain that a conviction does not lie unless the testimony of the prosecutrix is corroborated in the two essential elements of the offense of rape or seduction. See the annotation in 60 A.L.R. 1124 and the cases of *State* v. *Gibson*, 116 Pac. 872; *Spenrath* v. *State*, 48 S.W. 192; *People* v. *Dunbar*, 130 N.Y.S.2d 59; *People* v. *Mahoney*, 113 N.Y.S.2d 693; *People* v. *Alder*, 73 N.Y.S.2d 841.

Of course, no standard can be established for determining the sufficiency of the evidence of corroboration and each case should be decided on its own particular circumstances. In any event, we are of the opinion that the best rule is the one that requires some evidence of corroboration as to the essential elements of the crime of rape. It is a protection for the defendant, particularly when he has admitted the sexual relations, against false accusations of sexual offenses.

For the reasons stated we decide that in this case the record does not contain sufficient evidence of corroboration of the testimony of the prosecutrix, and, consequently, the judgment appealed from should be reversed and the defendant acquitted.

Mr. Justice Saldaña agrees with the result.